## WILLIAM FREEMAN *vs.* UNITED FRUIT COMPANY.

Suffolk.    January 24, 25, 1916. — March 3, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Negligence,* Toward licensee, Wilful or reckless conduct, Agreement to assume risk. *Contract,* Validity.    *Evidence,* Materiality, Interrogatories.    *Practice, Civil,* Conduct of trial: interrogatories, argument to jury.

A tailor, who is sent for by the wireless telegraph operator on a vessel lying in port to bring on board a uniform that he has made for the operator to be tried on, and who is injured by a heavy bundle of canvas being dropped upon him from a great height, having been permitted to come on board the vessel for his own pecuniary gain, is a mere licensee, and the company owning and operating the vessel owes to him while on board merely the duty to refrain from wilfully or recklessly injuring him.

In an action for injuries received in the manner above described, it is evidence for a jury of wilful, wanton or reckless conduct on the part of the servants of the owner of the vessel, that a roll of canvas, which struck the plaintiff while he was on the main deck and broke his leg, was thrown deliberately over the rail from the upper or boat deck without the slightest consideration for the safety of whomsoever might be in the path of the canvas as it descended.

If a person was on a vessel lying in dock under a pass in writing which he accepted and used, on which it was stipulated that "The person accepting this Free Permit, in consideration thereof, assumes all risks of accident, and expressly agrees that the [owner of the vessel] shall not be liable under any circumstances whether by negligence of its agents or otherwise for any loss or injury to the person using this permit on steamer, gangway, or pier property," he cannot maintain an action against the owner of the vessel for injuries caused by a heavy roll of canvas being recklessly thrown down upon him by the owner's servants when he was on the main deck.

The contract contained in such a pass is not void as contrary to public policy or the policy of the law.

In an action brought for the injuries caused in the manner above described, it is proper for the defendant to ask one of its witnesses, who was a sailor on board the vessel, "whether or not a parcel of canvas one and a half feet thick" and from twelve to fourteen feet long, as described by the witness, "could have been conveniently carried down the stairways," this having some bearing on the question of recklessness.

In the same action the plaintiff can put in evidence the orders given by the boatswain, in reply to an inquiry by one of the sailors whether the canvas was to be carried down or dropped down, "Throw it down; take a chance and throw it down."

In an action against a corporation for personal injuries, the plaintiff in his crossexamination of a witness for the defendant may make use of the substance of an answer to one of the interrogatories propounded by the plaintiff to the de-

fendant's president, this being a way of putting the answer in evidence; and, if the defendant does not choose to put in evidence the interrogatory and the entire answer to it or all the interrogatories and answers relating to that subject, this does not deprive the plaintiff's counsel of the right afterwards to refer to the substance of the answer in his closing argument to the jury.

BRALEY, J.   The action, which is tort for personal injuries, was submitted to the jury on the first count of the declaration which alleges, that while the plaintiff was lawfully on the defendant's steamship lying at her dock, he "was severely injured by the wanton and reckless conduct of the defendant, its servants or agents, in hurling or dropping against him from a great height a large bundle of canvas." A verdict having been returned for the plaintiff, the questions raised by the defendant's exceptions to the admission and exclusion of evidence, to the refusals to rule as requested and to the instructions defining the plaintiff's status while on the ship are presented for decision.

The first inquiry is, What were the plaintiff's legal rights at the time of the injury? While not conceded, the jury, independently of the pass under which the defendant contended he was only allowed on board, would have been warranted in finding upon undisputed evidence, that the plaintiff, a tailor, whose business consisted largely in making, repairing and cleansing clothes for sailors and uniforms for officers of steamships, numbered among his customers the crews and officers of the defendant company with whom he had dealt for many years; and that, some time before the accident and while on the defendant's ship, he had received an order "from the operator of wireless telegraphy" to make a uniform with the exception of the buttons which were to be furnished by the customer. It was admitted by the defendant, that the operator was properly on the ship and that the uniform was to be worn by him in connection with its "business." The uniform being ready, the plaintiff notified the operator to come to his shop, but, upon being informed that he could not attend, coupled with a request for him to come to the ship at an hour named, the plaintiff complied, and, while passing to the room of the operator, the accident happened. It further could have been found upon all the evidence, that the defendant's officers ought to have known of the plaintiff's previous course of business with the company's employees, among whom the jury could say the operator should

be classed. The plaintiff, however, having been permitted to transact business on the defendant's ships solely for his own pecuniary gain, was but a licensee, to whom the defendant owed no duty except to refrain from wantonly and wilfully causing him harm. *Reardon* v. *Thompson*, 149 Mass. 267, 268. *Dickie* v. *Davis*, 217 Mass. 25, 30.

The further inquiry is whether there is evidence of a breach of this obligation. No question of the defendant's negligence or the plaintiff's due care is involved. The first count of the declaration does not allege carelessness. It charges the commission of a wrong by the company, which is liable for the acts of its servants done wilfully, recklessly or wantonly in the course of their employment. *Aiken* v. *Holyoke Street Railway*, 184 Mass. 269, 274. *Yancey* v. *Boston Elevated Railway*, 205 Mass. 162, 171. The plaintiff was not required to prove a particular purpose or intention to harm him. Where personal injuries are thus caused the defendant is held to have intended the natural consequences of what he does, and "there is a constructive intention as to the consequences, which, entering into the wilful, intentional act, the law imputes to the offender, and in this way a charge which otherwise would be mere negligence, becomes by reason of a reckless disregard of probable consequences a wilful wrong." *Aiken* v. *Holyoke Street Railway*, 184 Mass. 269, 271. *Fottler* v. *Moseley*, 185 Mass. 563, 565. *Romana* v. *Boston Elevated Railway*, 218 Mass. 76. Bigelow on Torts, (8th ed.) c. 3, § 2.

The complete indifference to consequences distinguishes wrongs caused by wantonness and recklessness from torts arising from negligence, and the jury properly could find that the roll of canvas stiffened with ice which struck the plaintiff while on the main deck, breaking his leg, was deliberately thrown over the rail from the upper or boat deck without the slightest consideration for the safety of whomsoever might happen to be in the way as the canvas descended. *Pierce* v. *Cunard Steamship Co.* 153 Mass. 87, 88, 89. *Commonwealth* v. *Byard*, 200 Mass. 175, 177. The presiding judge * therefore rightly declined to rule, that there was no evidence "that the accident was caused by wilful or wanton and reckless conduct on the part of the defendant's servants."

---

* *Raymond, J.*

But, as the jury could have found on conflicting evidence that the plaintiff had accepted and used a pass, the conditions of which read, "The person accepting this Free Permit, in consideration thereof, assumes all risks of accident, and expressly agrees that the United Fruit Company shall not be liable under any circumstances whether by negligence of its agents or otherwise for any loss or injury to the person using this permit on steamer, gangway, or pier property," the further question for their decision was whether in the prosecution of his business he went aboard the ship solely because of the permission conferred by the pass. The plaintiff, if he acted under it, is bound by the conditions of the contract, and consented to take things as he found them, including the chance of injury from not merely their negligent, but the wanton and reckless acts of the defendant's servants when about their work. *Quimby* v. *Boston & Maine Railroad,* 150 Mass. 365. *Hosmer* v. *Old Colony Railroad,* 156 Mass. 506, 508. *Doyle* v. *Fitchburg Railroad,* 166 Mass. 492, 495. *Payne* v. *Terre Haute & Indianapolis Railway,* 157 Ind. 616. *McCawley* v. *Furness Railway,* L. R. 8 Q. B. 57.

The plaintiff urges, that, if held to embrace the wrong alleged, the conditions are void because violative of public policy or the policy of the law. But the defendant had abandoned no duty it owed to the public as a carrier or to the plaintiff merely as a member of the community. It is unnecessary to go so far as to decide whether a landowner, by whom a like permission had been given to enter upon his premises, would be liable in damages to the licensee while there for injuries inflicted by spring guns, traps, or ferocious animals kept and maintained by him. See *Marble* v. *Ross,* 124 Mass. 44; *Yancey* v. *Boston Elevated Railway,* 205 Mass. 162; *O'Brien* v. *Union Freight Railroad,* 209 Mass. 449, 452; *Reardon* v. *Thompson,* 149 Mass. 267, 268.

The jury should have been instructed as the defendant requested, that if they found the plaintiff was on the steamship by reason of the pass he could not recover, and the refusal so to rule was erroneous.

We do not deem it necessary to review the instructions given, except to say that but for this omission the grounds of liability were accurately stated, and that when read in their entirety they are not open to the objections and criticisms urged by counsel.

As there must be a new trial a word as to the rulings on evidence is pertinent. The question asked by the defendant of its witness, a sailor who participated in rolling up the canvas and throwing it over, "whether or not a parcel of canvas one and one half feet thick" and from twelve to fourteen feet long, as testified by the witness, "could have been conveniently carried down the stairways" should have been admitted, as it had some bearing on the question of recklessness.

The orders given by the boatswain in reply to the inquiry of one of the men, whether the canvas was to be carried or dropped down, "Throw it down; take a chance and throw it down," were properly admitted in evidence. The jury could find that he was in charge of the men and represented the defendant. *Ruddy* v. *George F. Blake Manuf. Co.* 205 Mass. 172.

Nor was there error in the use by the plaintiff in his cross-examination of a witness for the defendant of the substance of one of the answers to interrogatories propounded by the plaintiff to the defendant's president. It had the effect of putting in evidence the portion used. The defendant could then have introduced not only the interrogatory and the entire answer, but all the interrogatories and answers relating to that issue. It not having done so, the subsequent reference thereto by the plaintiff's counsel in his closing argument to the jury was also unexceptionable. R. L. c. 173, § 88. *Demelman* v. *Burton,* 176 Mass. 363, 364. *Churchill* v. *Ricker,* 109 Mass. 209.

*Exceptions sustained.*

*H. S. Davis,* (*R. G. Dodge* with him,) for the defendant.
*J. L. Hall,* (*S. C. Rand* with him,) for the plaintiff.